UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GUZMARO BALTIERRA, et al.,                    :

             Plaintiffs,             :         14 Civ. 5917 (AJP)

      -against-                        :        **OPINION & ORDER**

ADVANTAGE PEST CONTROL CO., and TONY   :
ORTIZ,
                               :

           Defendants.

                               x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**ANDREW J. PECK, United States Magistrate Judge:**

On August 10, 2015, defendants withdrew their answer and the Court entered default

for plaintiffs Guzmaro Baltierra, David Perez and Kelvin Jaquez against defendants Advantage Pest

Control and Tony Ortiz. (Dkt. No. 38: Order of Default.)  Presently before the Court is plaintiffs'

inquest request for damages.  (Dkt. Nos. 40-46.)  The parties consented to decision of this

FLSA/NYLL case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 39.)

For the reasons discussed below, judgment is entered for the plaintiffs for damages

as follows: Baltierra $379,532.24, Perez $5,234.40 and Jaquez $34,322.68, plus continuing

prejudgment interest until judgment is entered, as well as attorneys' fees and costs of $22,415.00

## FACTS

"Where, as here, 'the court determines that defendant is in default, the factual

allegations of the complaint, except those relating to the amount of damages, will be taken as true.'"

Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.)

(quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil 3d § 2688 at 58-

59 (3d ed. 1998)).

**The Complaint**

The amended complaint (Dkt. No. 21) alleges as follows:

Defendants Advantage Pest Control and Tony Ortiz are part of an integrated business enterprise where plaintiffs worked as exterminators. (Am. Compl. ¶¶ 15, 20, 28, 33.) Ortiz is a shareholder of Advantage Pest Control within the meaning of New York Business Corporations Law § 630. (Am. Compl. ¶ 16.) Ortiz had control over all employment practices at Advantage Pest, "including wages, scheduling and the hiring and firing of employees." (Am. Compl. ¶ 17.)

Plaintiff Guzmaro Baltierra worked for defendants as an exterminator since June 1, 2004; plaintiff David Perez worked for defendants as an exterminator from August 15, 2013 to September 15, 2013; plaintiff Kelvin Jaquez worked for the defendants as an exterminator from November 1, 2008 to August 15, 2011. (Am. Compl. ¶¶ 19-20, 28, 33.)

During their employment, plaintiffs worked more than ten hours per day and more than forty hours per week. (Am. Compl. ¶¶ 21-24, 30, 34-35, 42-44.) Defendants did not pay plaintiffs the minimum wage or overtime compensation required by the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). (Am. Compl. ¶¶ 48, 50, 55, 57.) Defendants did not pay spread of hours for each day that plaintiffs' shifts lasted more than ten hours per day. (Am. Compl. ¶ 59.) Defendants did not provide plaintiffs with wage notices or wage statements as required by the NYLL. (Am. Compl. ¶¶ 64, 66.)

The complaint alleges that defendants' violations of the FLSA and NYLL were willful. (Am. Compl. ¶¶ 38, 40.) The complaint asserts claims for unpaid minimum and overtime wages pursuant to the FLSA and NYLL (Am. Compl. ¶¶ 48, 50, 55, 57), spread of hours pursuant to the NYLL (Am. Compl. ¶ 59), and statutory damages for violations of the NYLL (Am. Compl.

Wherefore Clause ¶ H), and also seeks liquidated damages (id. ¶ G), prejudgment interest (id. ¶ K) and attorneys' fees and costs (id. ¶ J).[1]

**Inquest Submissions**

In support of inquest damages, plaintiff Baltierra filed an affidavit stating that he began working at Advantage Pest Control in June 2004.  (Dkt. No. 43: Baltierra Aff. ¶ 3.)  When Baltierra was hired, he was told that he would be paid by the job, but was not told how much he would be paid or how many hours he was required to work.  (Baltierra Aff. ¶¶ 5, 11.)  Baltierra was never given a wage statement with his pay that included the dates covered by the wages, his name, the rate of pay, the number of hours he worked, or the name and contact information for Advantage Pest Control.  (Baltierra Aff. ¶ 12.)  Baltierra worked six days a week, and typically began working at 8:00 a.m. and finished working between 8:00 p.m. and 9:00 p.m.  (Baltierra Aff. ¶ 5.)  In the summer of 2008, Baltierra complained to Ortiz about the number of hours he worked relative to his compensation, and Ortiz began to pay him $600 per week for approximately seventy-two hours of work.  (Baltierra Aff. ¶ 6.)  In March 2013, Baltierra quit his job with Advantage Pest Control.  (Baltierra Aff. ¶ 7.)  On or about April 1, 2013, Ortiz asked Baltierra to return to work, and assured him conditions would be better if he did.  (Baltierra Aff. ¶ 7.)  Between April 1, 2013 and July 30, 2014, when he commenced this lawsuit, Baltierra was paid $300 per week for approximately sixty-three hours of work.  (Baltierra Aff. ¶ 7.)  Baltierra was not paid overtime or spread of hours pay.  (Balteirra Aff. ¶¶ 9-10.)

After Baltierra filed this lawsuit on July 30, 2014, Ortiz would not permit him to work as many hours, and for a few months required him to punch in and out of work.  (Baltierra Aff.

---

[1]    Plaintiffs have voluntarily dismissed their claims for unlawful deductions under the FLSA and NYLL (Am. Compl. ¶¶ 51-53, 60-62).  (See Dkt. No. 46: Plaintiffs Br. at 1 n.1.)

¶ 8.)  Other than that brief period, defendants did not keep track of Baltierra's hours.  (Balteirra Aff.

¶ 13.)  Although other employees clocked in and out, Baltierra was instructed not to.  (Balteirra Aff.

¶ 13.)  Prior to filing this lawsuit, Baltierra took it upon himself to clock in and out a few times, to

show defendants how much he was working.  (Baltierra Aff. ¶ 13.)  Baltierra does not know what

happened to his punch cards, but he was not compensated differently for his time when he used

them.  (Baltierra Aff. ¶ 13.)  In May 2014, Baltierra was given one of his punch cards, but it had

been adjusted by hand to reflect fewer hours.  (Baltierra Aff. ¶ 13; see also Dkt. No. 42: Chickedantz

Aff. Ex. E.)

      Plaintiff Perez filed an affidavit stating that he began working at Advantage Pest

Control as an exterminator on or about August 15, 2013.  (Dkt. No. 44: Perez Aff. ¶ 3.)  Ortiz told

Perez that he "would be in 'training' until [he] was 'ready' to be an exterminator."  (Perez Aff. ¶ 4.)

Perez was never told how much he would be paid or how many hours he was required to work.

(Perez Aff. ¶¶ 4, 9.)  Perez typically worked six days per week, from 7:30 a.m. until 5:30 or 6:00

p.m, at least sixty hours per week.  (Perez Aff. ¶ 5.)  Perez observed that nearly every evening, Ortiz

took plaintiff Baltierra with him to perform night jobs.  (Perez Aff. ¶ 6.)

      On about September 15, 2013, Perez asked to be paid for the previous month's work.

(Perez Aff. ¶ 7.)  Ortiz told Perez that he was not yet ready to be paid.  (Perez Aff. ¶7.)  Perez quit,

and never was compensated for any of the time he worked at Advantage Pest Control.  (Perez Aff.

¶¶ 7-8.)  Defendants did not keep track of the time Perez worked, and although he punched in and

out a few times, his punch cards "always disappeared" and he was not compensated for the time

reflected on them.  (Perez Aff. ¶ 10.)

      Plaintiff Kelvin Jaquez filed an affidavit stating that he began working at Advantage

Pest Control on or about November 1, 2008.  (Dkt. No. 45: Jaquez Aff. ¶ 3.)  Ortiz told Jaquez that

he "would be in 'training' until [he] was 'ready to be an exterminator.'" (Jaquez Aff. ¶ 4.) Jaquez was never told how much he would be paid or how many hours he was required to work. (Jaquez Aff. ¶¶ 4, 11.) Jaquez typically worked six days per week, from 8:00 a.m. to 5:00 p.m, for at least fifty hours per week. (Jaquez Aff. ¶ 5.) From November 1, 2008 until December 31, 2008, Jaquez was paid $100 per week for a minimum of fifty hours of work. (Jaquez Aff. ¶ 6.) On January 1, 2009, Ortiz told Jaquez that he was "'ready'" to be an exterminator, and would be paid $300 per week. (Jaquez Aff. ¶ 7.) Jaquez was not told how many hours he was expected to work as an exterminator, or what his hourly rate was. (Jaquez Aff. ¶ 7.) Jaquez occasionally went on night jobs with Ortiz, and on those days usually worked until 10:00 p.m. (Jaquez Aff. ¶ 8.) Jaquez observed that Baltierra went on night jobs with Ortiz nearly every day. (Jacquez Aff. ¶ 8.) Jaquez was never paid overtime, although he always worked more than forty hours per week. (Jaquez Aff. ¶ 10.) Jaquez never received a wage statement indicating his hourly wage or the number of hours he worked. (Jaquez Aff. ¶ 11.) Defendants did not keep track of Jaquez's time, and he never clocked in or out of work. (Jaquez Aff. ¶ 12.)

Plaintiffs' attorney attached a chart to her affidavit, dividing plaintiffs' employment into periods based upon their wages and detailing the damage calculation during each period. (Chickedantz Aff. Ex. F: Calculations Chart.) Plaintiffs claim that defendants owe them a total of $460,990.66 for unpaid wages, overtime and spread of hours wages, liquidated damages, and penalties for notice and record keeping violations. (Chickedantz Aff. ¶ 19 & Ex. F: Calculations Chart.)

Defendants withdrew their answer on August 10, 2015 (see Dkt. No. 47: 8/10/15 Conf. Tr. at 6), and did not submit any papers in opposition to the inquest.

## ANALYSIS

## I.    APPLICABLE LEGAL STANDARDS

The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'"  Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

In a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct.  See, e.g., Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88, 66 S. Ct. 1187, 1192 (1946) ("[A]n employee has carried out his burden [of production under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."); Grochowski v. Phoenix Constr., 318 F.3d 80, 87-88 (2d Cir. 2003); Harold Levinson Assocs., Inc. v. Chao, 37 F. App'x 19, 20 (2d Cir. 2002), cert. denied, 546 U.S. 933, 126 S. Ct. 415 (2005); Tran v. Alphonse Hotel Corp., 281 F.3d 23, 31 (2d Cir. 2002); Reich v. S. New Eng. Telecomms. Corp., 121 F.3d 58, 66 (2d Cir. 1997); Carrasco v. W. Village Ritz

Corp., 11 Civ. 7943, 2012 WL 2814112 at *2 (S.D.N.Y. July 11, 2012) (Peck, M.J.), <u>report & rec.</u>

<u>adopted</u>, 2012 WL 3822238 (S.D.N.Y. Sept. 4, 2012).[2]

## II.     <u>APPLICATION OF THE STANDARDS TO THIS CASE</u>

The Court has reviewed plaintiffs' affidavits and chart (<u>see</u> pages 3-5 above) and

accepts plaintiffs' estimates of hours worked: Baltierra, seventy-two hours per week between July

30, 2008 and March 31, 2013 and sixty-three hours per week between April 1, 2013 and July 30,

2014; Perez, sixty hours per week between August 15, 2013 and September 15, 2013; and Jaquez,

fifty hours per week between November 1, 2008 and August 15, 2011.

### A.     <u>Statute of Limitations</u>

Plaintiffs bring claims pursuant to the FLSA and NYLL.  The statute of limitations

is six years under the NYLL and two years under the FLSA, increased to three years for "willful"

violations.  <u>See</u> N.Y. Labor Law § 198(3); 29 U.S.C. § 255(a).  Plaintiffs allege that defendants'

FLSA and NYLL violations were willful.  (Dkt. No. 21: Am. Compl. ¶¶ 38, 40.)  By virtue of the

entry of default, the Court accepts plaintiffs' allegation as true.  <u>See</u>, <u>e.g.</u>, <u>Alvarez</u> v. <u>215 N. Ave.</u>

---

[2]     <u>See also</u>, <u>e.g.</u>, <u>Fu</u> v. <u>Pop Art Int'l Inc.</u>, 10 Civ. 8562, 2011 WL 4552436 at *2 (S.D.N.Y. Sept. 19, 2011) (Peck, M.J.), <u>report & rec. adopted as modified on other grounds</u>, 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011); <u>Alejo</u> v. <u>Darna Rest.</u>, 09 Civ. 5436, 2010 WL 5249383 at *3 (S.D.N.Y. Dec. 17, 2010) (Peck, M.J.), <u>report & rec. adopted as modified</u>, 2011 WL 165413 (S.D.N.Y. Jan. 18, 2011); <u>Rivera</u> v. <u>Ndola Pharmacy Corp.</u>, 497 F. Supp. 2d 381, 388-89 (E.D.N.Y. 2007); <u>Chan</u> v. <u>Sung Yue Tung Corp.</u>, 03 Civ. 6048, 2007 WL 313483 at *23-24 (S.D.N.Y. Feb. 1, 2007) (Lynch, D.J.); <u>Doo Nam Yang</u> v. <u>ACBL Corp.</u>, 427 F. Supp. 2d 327, 332-33 (S.D.N.Y. 2005); <u>Liu</u> v. <u>Jen Chu Fashion Corp.</u>, 00 Civ. 4221, 2004 WL 33412 at *3 (S.D.N.Y. Jan. 7, 2004) (Peck, M.J.); <u>Mascol</u> v. <u>E & L Transp. Inc.</u>, 387 F. Supp. 2d 87, 93-94 (E.D.N.Y. 2005); <u>Moon</u> v. <u>Kwon</u>, 248 F. Supp. 2d 201, 219 (S.D.N.Y. 2002) (Lynch, D.J.); <u>Chao</u> v. <u>Vidtape, Inc.</u>, 196 F. Supp. 2d 281, 293 (E.D.N.Y. 2002), <u>aff'd as modified on other grounds</u>, 66 F. App'x 261 (2d Cir.), <u>cert. denied</u>, 540 U.S. 1047, 124 S. Ct. 807 (2003); <u>Cao</u> v. <u>Chandara Corp.</u>, 00 Civ. 8057, 2001 WL 34366628 at *4-5 (S.D.N.Y. July 25, 2001); <u>Chen</u> v. <u>Jenna Lane, Inc.</u>, 30 F. Supp. 2d 622, 624-25 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.).

Corp., 13 Civ. 7049, 2015 WL 3855285 at *1, *3 (S.D.N.Y. June 19, 2015); Fu v. Pop Art Int'l Inc.,

10 Civ. 8562, 2011 WL 4552436 at *4 (S.D.N.Y. Sept. 19, 2011) (Peck, M.J.), report & rec. adopted

as modified on other grounds, 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011); Wicaksono v. XYZ 48

Corp., 10 Civ. 3635, 2011 WL 2022644 at *6 (S.D.N.Y. May 2, 2011) ("[T]he defendant is in

default, and therefore the plaintiffs' allegation that its conduct was willful is credited."), report &

rec. adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011); Jin M. Cao v. Wu Liang Ye Lexington

Rest., Inc., 08 Civ. 3725, 2010 WL 4159391 at *2 (S.D.N.Y. Sept. 30, 2010) (Chin, D.J.)

("[D]efendants defaulted and thus plaintiffs' allegations that the FLSA violations were willful are

deemed admitted.").

Thus, the three-year statute of limitations applies to the FLSA claims.  The complaint

in this action was filed on July 30, 2014.  (Dkt. No. 1: Compl.)  Accordingly, plaintiffs are entitled

to recover damages for violations of the FLSA beginning on July 30, 2011, and for violations of the

NYLL beginning on July 30, 2008.

### B.    Minimum Wage and Overtime Pay

The FLSA requires employers to pay employees at least the federal minimum wage

for every hour worked,  29 U.S.C. § 206, and the state minimum wage if it exceeds the federal

minimum wage.  See 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder

shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a

minimum wage higher than the minimum wage established under this chapter . . . .").  The statutory

minimum wage in New York between January 1, 2007 and December 30, 2013 was $7.15 per hour.

N.Y. Labor Law § 652(1).  After July 24, 2009, the federal minimum wage was $7.25 per hour.  See

29 U.S.C. § 206(a)(1)(C).  Thus, prior to July 24, 2009 plaintiffs were entitled to $7.15 per hour, and

between July 24, 2009 and December 30, 2013, plaintiffs were entitled to $7.25 per hour.  On and

after December 31, 2013, New York's minimum wage was $8.00 per hour, N.Y. Labor Law § 652(1), and plaintiffs thus were entitled to $8.00 per hour after that date.

Plaintiffs' counsel described the methodology employed to determine plaintiff's unpaid overtime and minimum wages as follows:

Regular Rate

iv.  [T]he total weekly wages received by plaintiffs for the hours worked in the given period.

v.  [T]he "regular rate" of pay [is] derived by dividing the total amount of wages received in a work week by forty (40).

Minimum Wage

vi.  [T]he amount of minimum wages owed per hour [is] derived by subtracting the regular rate from . . . the statutory minimum wage.  [This] only applies when the regular rate is less than the statutory minimum wage for the given period.

vii.  [T]he amount of minimum wages due each week in the given period, [is] derived by multiplying [the minimum wages owed per hour by the number of hours plaintiff worked per week].  [This] only applies when the regular rate is less than the statutory minimum wage for the given period.

Overtime

viii.  [T]he amount of overtime premium that should have been paid each hour for all hours over forty in a given work week. . . . is derived by multiplying [the regular rate] by 1.5.  In the cases where the regular rate is less than minimum wage in any given period, [this] is derived by multiplying the statutory minimum wage by 1.5.[3/]

---

[3/]  The method employed by counsel to calculate the unpaid overtime wages for Baltierra, who was paid a weekly salary of $600  between July 30, 2008 and March 31, 2013 (see page 3 above) to compensate him for all hours worked (but not including an overtime premium for hours above forty) previously has been approved by this court.  See, e.g., Fu v. Pop Art Int'l Inc., 10 Civ. 8562, 2011 WL 4552436 at *3 & n.5 (S.D.N.Y. Sept. 19, 2011) (Peck, M.J.) (citing Ting Yao Lin v. Hayashi Ya II, Inc., 08 Civ. 6071, 2009 WL 289653 at *4-5 (S.D.N.Y. Jan. 30, 2009) (Peck, M.J.), report & rec. adopted as modified on other grounds,
(continued...)

ix.     [T]he weekly amount of overtime that should have been paid. . . . is derived by multiplying the overtime premium by the total number of hours over forty worked in each work week.

(Chickedantz Aff. ¶ 15 (column titles omitted & fn. added).)

The Court agrees with counsel's methodology and has reviewed the arithmetic in the chart provided.  (Chickedantz Aff. Ex. F: Calculations Chart.)  The Court found and corrected errors in counsel's calculations pertaining to Jaquez and determines that plaintiffs are entitled to unpaid overtime and minimum wages as follows:  Baltierra $194,651.25; Perez $2,284.20; and Jaquez $17,849.30.

Guzmaro Baltierra

| Period Start | Period End | Weeks in Period | Hours of Work Per Week | Weekly Wages | Regular Rate [Weekly Wages divided by 40] | Minimum Wages Owed Per Hour [Statutory Minimum Wage minus Regular Rate] | Weekly Minimum Wages Due [Minimum wages owed per hour x 40] | Unpaid Overtime Premium [Regular Rate x 1.5] OR Statutory Overtime Rate if Regular Rate is less than Minimum Wage | Weekly Overtime Due Premium x hours over 40] | Total Overtime Owed [weekly overtime due x weeks in period] + Total Minimum Wages Owed [weekly minimum wage owed x weeks in period] |
|---|---|---|---|---|---|---|---|---|---|---|
| 7/30/2008 | 3/31/2013 | 244 | 72 | $600 | $15 | $0 | $0 | $22.50 | $720 | $175,680 |
| 4/1/2013 | 12/30/2013 | 39 | 63 | $300 | $7.50 | $0 | $0 | $11.25 | $258.75 | $10,091.25 |
| 12/31/2013 | 7/30/2014 | 30 | 63 | $300 | $7.50 | $0.50 | $20 | $12 | $276 | $8,280 + $600 = $8,880 |
| **TOTAL** | | | | | | | | | | **$194,651.25** |

3/        (...continued)
2009 WL 513371 (S.D.N.Y. Feb. 27, 2009)).

David Perez

| Period Start | Period End | Weeks in Period | Hours of Work Per Week | Weekly Wages | Regular Rate [Weekly Wages divided by 40] | Minimum wages Owed Per Hour [Statutory Minimum Wage minus Regular Rate] | Weekly Minimum Wages Due [Minimum wages owed per hour x 40] | Unpaid Overtime Premium [Regular Rate x 1.5] OR Statutory Overtime Rate if Regular Rate is less than Minimum Wage | Weekly Overtime Due [Premium x hours over 40] | Total Overtime Owed [weekly overtime due x weeks in period] + Total Minimum Wages Owed [weekly minimum wage owed x weeks in period] |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/15/2013 | 9/15/2013 | 4.5 | 60 | $0 | $0 | $7.25 | $290 | $10.88 | $217.60 | $979.20+$1,305 = $2,284.20 |
| **Total** | | | | | | | | | | **$2,284.20** |

Kelvin Jaquez

| Period Start | Period End | Weeks in Period | Hours of Work Per Week | Weekly Wages | Regular Rate [Weekly Wages divided by 40] | Minimum wages Owed Per Hour [Statutory Minimum Wage minus Regular Rate] | Weekly Minimum Wages Due [Minimum wages owed per hour x 40] | Unpaid Overtime Premium [Regular Rate x 1.5] OR Statutory Overtime Rate if Regular Rate is less than Minimum Wage | Weekly Overtime Due [Premium x hours over 40] | Total Overtime Owed [weekly overtime due x weeks in period] + Total Minimum Wages Owed [weekly minimum wage owed x weeks in period] |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/1/2008 | 12/31/2008 | 8.5 | 50 | $100 | $2.50 | $4.65 | $186 | $10.73 | $107.30 | $912.05+$1,581 = $2,493.05 |
| 1/1/2009 | 8/15/2011 | 136.5 | 50 | $300 | $7.50 | $0 | $0 | $11.25 | $112.50 | $15,356.25 |
| **TOTAL** | | | | | | | | | | **$17,849.30** |

## C.    **Spread of Hours Pay**

Under New York law, an "employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required by [New York's minimum wage law], for any day in which . . . the spread of hours exceeds 10 hours."  12 N.Y.C.R.R. § 142-2.4.  Spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty."   12 N.Y.C.R.R. § 146-1.6.

Most courts in this Circuit have ruled that New York's spread of hours provision applies only to employees earning minimum wage.  See, e.g., Pinovi v. FDD Enters., Inc., 13 Civ.

2800, 2015 WL 4126872 at *5 (S.D.N.Y. July 8, 2015) ("[R]ecent case law has been nearly unanimous that the spread-of-hours requirement extends only to workers paid at the minimum wage level."); Fu v. Pop Art Int'l Inc., 10 Civ. 8562, 2011 WL 4552436 at *6 (S.D.N.Y. Sept. 19, 2011) (Peck, M.J.), report & rec. adopted as modified on other grounds, 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011); Zubair v. EnTech Eng'g P.C., 808 F. Supp. 2d 592, 601 (S.D.N.Y. 2011) (New York's spread of hours provision "is properly limited to those employees who receive only the minimum compensation required by law."); Franklin v. Breton Int'l, Inc., 06 Civ. 4877, 2006 WL 3591949 at *4 (S.D.N.Y. Dec. 11, 2006) ("The 'spread of hours' provision in the New York regulations requires an additional hour's pay at the 'basic minimum hourly wage rate' for any day where the spread of hours in a day exceeds ten hours.  The provision, however, applies only to workers earning the minimum wage." (citation omitted)); Chan v. Triple 8 Palace, Inc., 03 Civ. 6048, 2006 WL 851749 at *21 (S.D.N.Y. Mar. 30, 2006) (Lynch, D.J.) ("The plain text of § [142-2.4] ensures an additional wage only 'in addition to the minimum wage' required under New York law (emphasis added).  It is therefore to be expected that the provision will not affect workers whose total weekly compensation is already sufficiently above the minimum rate.").[4/]

A minority of decisions have applied New York's spread of hours provision to all employees, even those earning more than minimum wage.  Santillan v. Henao, 822 F. Supp. 2d 284, 294-96 (E.D.N.Y. 2011); Cuzco v. Orion Builders, Inc., 06 Civ. 2789, 2010 WL 2143662 at *2, *4

---

[4/]    See also, e.g., Sosnowy v. A. Perri Farms, Inc., 764 F. Supp. 2d 457, 474 (E.D.N.Y. 2011) ("'[T]he spread-of-hours provision is properly limited to enhancing the compensation of those receiving only the minimum required by law.'"); Almeida v. Aguinaga, 500 F. Supp. 2d 366, 370 (S.D.N.Y. 2007) ("[N]o group of well-paid workers is carved out from getting more 'minimum' pay, because the spread-of-hours provision is properly limited to enhancing the compensation of those receiving only the minimum required by law.").

& n.8 (S.D.N.Y. May 26, 2010); <u>Doo Nam Yang</u> v. <u>ACBL Corp.</u>, 427 F. Supp. 2d 327, 339-40 (S.D.N.Y. 2005).

      This Court agrees with the majority view because the language of New York's spread of hours provision specifically states that the premium is "in addition to the minimum wage." 12 N.Y.C.R.R. § 142-2.4. "It is therefore to be expected that the provision will not affect workers whose total weekly compensation is already sufficiently above the minimum rate." <u>Chan</u> v. <u>Triple 8 Palace, Inc.</u>, 2006 WL 851749 at *21; <u>see also</u>, <u>e.g.</u>, <u>Fermin</u> v. <u>Las Delicias Peruanas Rest., Inc.</u>, No. 14-CV-0559, --- F. Supp. 3d ----, 2015 WL 1285960 at *22 (E.D.N.Y. Mar. 19, 2015) ("A limitation upon a plaintiff's eligibility to recover for spread-of-hours is that the plaintiff not earn more than the minimum wage."); <u>Sosnowy</u> v. <u>A. Perri Farms, Inc.</u>, 764 F. Supp. 2d at 474 ("Based on the Court's own reading of the statute, the Court agrees with the cases that find that the explicit reference to the 'minimum wage' in section 142-2.4 indicates that 'the spread-of-hours provision is properly limited to enhancing the compensation of those receiving only the minimum required by law.'"); <u>Espinosa</u> v. <u>Delgado Travel Agency, Inc.</u>, 05 Civ. 6917, 2007 WL 656271 at *2 (S.D.N.Y. Mar. 2, 2007) ("By its plain language, section 142-2.4(a) only provides supplemental wages to workers who are paid the minimum wage required under New York law. It does not ensure additional compensation to employees whose wages sufficiently exceed that floor."), <u>modified on other grounds</u>, 2007 WL 1222858 (S.D.N.Y. Apr. 24, 2007).

      Moreover, the New York State Department of Labor ("DOL") has issued Opinion Letters interpreting New York's spread of hours provision as applying only to employees earning minimum wage. <u>See</u> N.Y.S. Dep't of Labor 3/16/07 Opinion Letter at 1, File No. RO-07-0009, http://labor.ny.gov/legal/counsel/pdf/Minimum%20Wage%20Orders/RO-07-0009A.pdf (last visited Sept. 14, 2015) ("[O]n any day that an employee works a 'spread of hours' . . . he must be paid <u>at a</u>

minimum:  the minimum wage for such hours together with an additional hour of pay at the minimum wage.  If, however, the employee's regular wages for those hours worked is equal to or greater than this 'spread of hours pay,' no additional wages need be paid."); see also N.Y.S. Dep't of Labor 4/12/06 Opinion Letter at 2, File No. RO-06-0027(on file with the Court) ("It is important to note that the 'spread of hours' regulation does not require all employees to be paid for an additional hour, but merely that the total wages paid be equal to or greater than the total due for all hours at the minimum wage plus one additional hour at the minimum wage.").

Because the DOL is charged with enforcing New York's labor regulations, its interpretation of New York's spread of hours provision is entitled to deference. See, e.g., Guadalupe v. Tri-State Emp't, Mgmt. & Consulting, Inc., No. 10-CV-3840, 2013 WL 4547242 at *13 (E.D.N.Y. Aug. 28, 2013); Seenaraine v. Securitas Sec. Servs. USA, Inc., 37 A.D.3d 700, 701-02, 830 N.Y.S.2d 728, 729 (2d Dep't) ("The interpretation of the spread-of-hours regulation advanced by the defendant [i.e., that it applies only to employees earning minimum wage] is based upon the regulation and opinions promulgated by the New York State Department of Labor.  An agency's interpretation of its own regulation is entitled to deference unless it is unreasonable or irrational. . . . Here, the Department of Labor's interpretation of the regulation is neither unreasonable nor irrational, nor is it in conflict with the plain meaning of the promulgated language.  Thus, it is entitled to deference." (citations omitted)), appeal denied, 9 N.Y.3d 813, 846 N.Y.S.2d 603 (2007).[5/]

---

[5/]   See generally, e.g., Ramos v. SimplexGrinnell LP, 796 F. Supp. 2d 346, 367 (E.D.N.Y. 2011) (addressing DOL opinion letters: "The New York Court of Appeals has repeatedly held that agency interpretations, including formal and informal opinions, are entitled to deference unless they are irrational, unreasonable, or go against the plain meaning of the relevant statute."), vacated in part, 773 F.3d 394 (2d Cir. 2014); Samiento v. World Yacht Inc., 10 N.Y.3d 70, 79, 854 N.Y.S.2d 83, 88 (2008) ("The [N.Y.S.] Labor Department's interpretation of a statute it is charged with enforcing is entitled to deference.  The (continued...)

The decisions in this Circuit that have limited spread of hours to employees earning minimum wage also have relied on the DOL's Opinion Letters.  See, e.g., Williams v. Tri-State Biodiesel, L.L.C., 13 Civ. 5041, 2015 WL 305362 at *16 (S.D.N.Y. Jan. 23, 2015); Zubair v. EnTech Eng'g P.C., 808 F. Supp. 2d at 601; Sosnowy v. A. Perri Farms, Inc., 764 F. Supp. 2d at 473-74; Almeida v. Aguinaga, 500 F. Supp. 2d at 369-70.

Plaintiffs' counsel described the methodology used to determine spread of hours pay as follows:

> xi.   [T]he spread-of-hours premiums owed . . . is derived by multiplying the number of days per week that the plaintiff worked in excess of ten hours by the statutory minimum wage for that period.  This calculation only applies to Mr. Baltierra, who is the only plaintiff who worked in excess of 10 [hours] in any given day on or after July 24, 2009.

(Dkt. No. 42: Chickedantz Aff. ¶ 15(xi).)  For all but thirty weeks of the six year statutory period, Baltierra's regular rate of pay was more than the statutory minimum wage. (See chart on page 10 above.)  Thus, while the Court agrees with the methodology used by plaintiffs' counsel, spread of hours pay only is appropriate for the period between December 31, 2013 and July 30, 2014 when Baltierra's regular rate of pay was below the minimum wage.  Accordingly, the Court finds Baltierra is owed $1,440 in spread of hours pay.

---

[5]/   (...continued)
construction given statutes and regulations by the agency responsible for their administration, 'if not irrational or unreasonable,' should be upheld." (citation omitted)).  In addressing federal law, in contrast, an agency's interpretation in an opinion letter is "entitled to respect . . . but only to the extent that those interpretations have the power to persuade." Christensen v. Harris Cnty., 529 U.S. 576, 587, 120 S. Ct. 1655, 1663 (2000) (citation & quotations omitted).

| Period Start | Period End | Weeks in Period | Hours Per Week | Weekly Wages | Regular Rate [Weekly Wages divided by 40] | Minimum wages owed per hour [Statutory Minimum Wage minus Regular Rate] | Spread of Hours Premium [days worked per week x minimum hourly wage x number of applicable weeks] |
|---|---|---|---|---|---|---|---|
| 12/31/2013 | 7/30/2014 | 30 | 63 | $300 | $7.50 | $0.50 | 6 x $8 = $48 x 30 weeks = $1,440 |
| **TOTAL** | | | | | | | **$1,440** |

### D.   Liquidated Damages

Under the FLSA, a plaintiff is entitled to liquidated damages of 100%.  29 U.S.C.

§ 216(b); see, e.g., Alvarez v. 215 N. Ave. Corp., 13 Civ. 7049, 2015 WL 3855285 at *1 (S.D.N.Y.

June 19, 2015); Marfak v. Peretta, 10 Civ. 7785, 2011 WL 1758625 at *1 (S.D.N.Y. May 6, 2011)

("The FLSA imposes the obligation to pay unpaid overtime compensation and 'an additional equal

amount as liquidated damages' on employers who violate its requirement that overtime wages be

paid." (quoting 29 U.S.C. § 216(b))); Alejo v. Darna Rest., 09 Civ. 5436, 2010 WL 5249383 at *6

(S.D.N.Y. Dec. 17, 2010) (Peck, M.J.), report & rec. adopted as modified, 2011 WL 165413

(S.D.N.Y. Jan. 18, 2011).[6/]   Here, the FLSA's three-year statute of limitations for willful violations

applies, and plaintiffs are entitled to liquidated damages on their minimum wage and overtime

claims from July 30, 2011.  See 29 U.S.C. § 255(a); see also pages 7-8 above.  As the Second Circuit

has noted, the FLSA's liquidated damages "are not a penalty exacted by the law, but rather

---

[6/]   See also, e.g., Vasquez v. Ranieri Cheese Corp., No. 07-CV-464,  2010 WL 1223606 at *18
(E.D.N.Y. Mar. 26, 2010) ("FLSA entitles an employee to recover an amount equal to the
unpaid wages (i.e., an additional 100% of the unpaid wages awarded) in the form of
liquidated damages."); Dong v. CCW Fashion Inc., 06 Civ. 4973, 07 Civ. 9741, 2009 WL
884680 at *4 (S.D.N.Y. Feb. 19, 2009) ("The FLSA allows for an additional 100% of the
amount owed for minimum wage and/or overtime violations, which means that those
amounts are doubled."), report & rec. adopted, 2009 WL 884668 (S.D.N.Y. Apr. 1, 2009);
Ting Yao Lin v. Hayashi Ya II, Inc., 08 Civ. 6071, 2009 WL 289653 at *7 (S.D.N.Y.
Jan. 30, 2009) (Peck, M.J.), report & rec. adopted, 2009 WL 513371 (S.D.N.Y. Feb. 27,
2009).

compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999) (citing Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 583-84, 62 S. Ct. 1216, 1233 (1942)); see also, e.g., Irizarry v. Catsimatidis, 722 F.3d 99, 116 (2d Cir. 2013) ("liquidated damages as authorized by the FLSA are not penalties but rather compensatory damages for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." (quotations omitted)), cert. denied, 134 S. Ct. 1516 (2014); Reich v. S. New Eng. Telecomms. Corp., 121 F.3d 58, 71 n.4 (2d Cir. 1997) ("Congress provided for liquidated damages as a means of compensating employees 'for losses they might suffer by reason of not receiving their lawful wage at the time it was due.'").

Additionally, under New York law at the start of Baltierra and Jaquez's employment, a plaintiff was entitled to liquidated damages of 25% of the owed wages where the defendant's violation was "willful." N.Y. Labor Law §§ 198(1-a), 663(1) (in effect prior to Apr. 9, 2011). As defendants defaulted, plaintiffs' allegations that defendants' conduct was "willful" (see page 2 above) are credited. (See also cases cited at pages 7-8 above.) Unlike the FLSA, however, New York's liquidated damages are not compensatory and "'constitute a penalty' to deter an employer's willful withholding of wages due." See, e.g., Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999) (quoting Carter v. Frito-Lay, Inc., 74 A.D.2d 550, 551, 425 N.Y.S.2d 115, 116-17 (1st Dep't 1980), aff'd, 52 N.Y.2d 994, 438 N.Y.S.2d 80 (1981)), cert. denied, 528 U.S. 1119, 120 S. Ct. 940 (2000).

On December 10, 2010, the New York legislature amended New York Labor Law §§ 198(1–a) and 663(1) to incorporate the federal standard, increasing the amount of available liquidated damages from 25% to 100%, effective April 11, 2011. 2010 N.Y. Sess. Laws ch. 564 §§

1, 3; NYLL §§ 198(1–a), 663(1).  In the absence of clear legislative intent, courts in this district have declined to apply the 2011 amendment retroactively.  See, e.g., Kim v. Kum Gang, Inc., 12 Civ. 6344, 2015 WL 2222438 at *31 (S.D.N.Y. Mar. 19, 2015) (collecting cases); Galeana v. Lemongrass on Broadway Corp., 10 Civ. 7270, --- F. Supp. 3d ----, 2014 WL 1364493 at *9 (S.D.N.Y. Apr. 4, 2014); Chenensky v. N.Y. Life Ins. Co., 07 Civ. 11504, 2012 WL 234374 at *2-3 (S.D.N.Y. Jan. 10, 2012); Wicaksono v. XYZ 48 Corp., 10 Civ. 3635, 2011 WL 2022644 at *6 n.2 (S.D.N.Y. May 2, 2011), report & rec. adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011).

Accordingly, Baltierra and Jaquez are entitled to liquidated damages at the state statutory rate of 25% on minimum, overtime and spread of hours wage claims arising prior to April 11, 2011, and all three plaintiffs are entitled to liquidated damages at the state statutory rate of 100% on claims arising between April 11, 2011 and July 29, 2011, and at the federal statutory rate of 100% for all claims arising on or after July 30, 2011.[7]  Baltierra is owed liquidated damages of $120,491.65; Perez, $2,284.20; and Jaquez, $5981.08, as follows:

---

[7]     Plaintiffs do not seek cumulative liquidated damages under both the NYLL and FLSA.  (See Dkt. No 46: Plaintiffs Br. at 15 n.6.)  In any event, the Court would not award them.  See Fu v. Pop Art Int'l, 10 Civ. 8562, 2011 WL 4552436 at *3-5 (S.D.N.Y. Sept. 19, 2011) (Peck, M.J.), report & rec. adopted as modified on other grounds, 2011 WL 6092309 (S.D.N.Y. Sept. 19, 2011).

| | Unpaid Overtime wages prior to April 11, 2011 [x 25] (NYLL) | Unpaid Overtime Wages on or after April 11, 2011 until July 29, 2011 (NYLL) | Unpaid Overtime Wages on or after July 30, 2011 (FLSA) | Unpaid Minimum wages prior to April 11, 2011 [x 25] (NYLL) | Unpaid Minimum wages on or after April 11, 2011 until July 29, 2011 (NYLL) | Unpaid Minimum wages on or after July 30, 2011 (FLSA) | Unpaid Spread of Hours premium (NYLL) | Total Liquidated Damages Owed |
|---|---|---|---|---|---|---|---|---|
| Guzmaro Baltierra | 7/30/08-4/10/11 140 weeks x $720 = $100,800 $100,800 x .25 = **$25,200** | 4/11/11-7/29/11 16 weeks x $ 720 = $11,520 | 7/30/11-3/31/13 88 weeks x $720 = $63,360 4/1/13-12/30/13 39 weeks x $258.75= $10,091.25 12/31/13-7/30/14 30 weeks x $276 = $8,280 TOTAL: **$81,731.25** | $0 | $0 | 12/31/13-7/30/14 $600 | $1,440.40 | **$120,491.65** |
| David Perez | $0 | $0 | $979.20 | $0 | $0 | $1,305 | $0 | **$2,284.20** |
| Kelvin Jaquez | 11/1/08-12/31/08 8.5 weeks x $107.30 = $912.05 1/1/09-4/11/11 118.5 weeks x $112.50= $1,331.25 TOTAL: $14,243.30 x.25 = **$3,560.83** | 4/11/11-7/29/11 16 weeks x 112.50 = $1,800 | 7/30/11-8/15/11 2 weeks x 112.50 = $225 | 11/1/08-12/31/08 8.5 weeks x 186 = $1,581 x.25 = **$395.25** | $0 | $0 | $0 | **$5,981.08** |

E.    **Wage Notice And Record Keeping Violations**

Plaintiffs seek to recover damages for defendants' failure to provide regular wage statements and annual wage notices as required by New York's Wage Theft Prevention Act ("WTPA"), an amendment to the NYLL effective April 9, 2011.  (See Dkt. No. 46: Plaintiffs Br. at 11-12.)  The WTPA requires employers to

furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. . . . [T]he statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

N.Y. Labor Law § 195(3).  The WTPA does not apply retroactively, and thus prior to April 9, 2011,

defendants were not obliged to provide plaintiffs with wage statements.  See, e.g., Haas v. Verizon

N.Y., Inc., 13 Civ. 8130, 2015 WL 4884858 at *25 (S.D.N.Y. Aug. 13, 2015); Inclan v. N.Y.

Hospitality Grp., Inc., 12 Civ. 4498, --- F. Supp. 3d ----, 2015 WL 1399599 at *8 (S.D.N.Y. Mar.

26, 2015).  Prior to February 27, 2015, the WTPA entitled employees to recover statutory damages

for violations of the wage statement requirement of $100 per work week, not to exceed $2,500.  See

2010 N.Y. Laws ch. 564 § 7, amending N.Y. Labor Law § 198(1–d).

As plaintiffs assert that they never were given compliant wage statements (see pages

2, 3, 5 above), from April 9, 2011 through the conclusion of their employment, each plaintiff is

entitled to statutory damages of $100 per work week, not to exceed $2,500, as follows:

|  | Period Start | Period End | Weeks in Period | Statutory Damages [weeks in period x $100, not to exceed $2,500] |
|---|---|---|---|---|
| Guzmaro Baltierra | 4/9/2011 | 7/30/2014 | 173.5 | $2,500 |
| David Perez | 8/15/2013 | 9/15/2013 | 4.5 | $450 |
| Kelvin Jaquez | 4/9/2011 | 8/15/2011 | 18 | $1,800 |

Plaintiffs also assert that they never were provided with wage notices.  (See pages

2, 3, 5 above.)  The WTPA requires that at the time of hiring, employers furnish each employee

> in writing in English and in the language identified by each employee as the primary
> language of such employee, at the time of hiring, a notice containing the following
> information: the rate or rates of pay and basis thereof, whether paid by the hour,
> shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as
> part of the minimum wage, including tip, meal, or lodging allowances; the regular
> pay day designated by the employer in accordance with section one hundred
> ninety-one of this article; the name of the employer; any "doing business as" names
> used by the employer; the physical address of the employer's main office or principal
> place of business, and a mailing address if different; the telephone number of the
> employer; plus such other information as the commissioner deems material and
> necessary.

N.Y. Labor Law § 195(1)(a).  Prior to December 29, 2014, employers also were required to provide wage notices "on or before February first of each subsequent year of the employee's employment with the employer."  N.Y. Labor Law § 195(1)(a) (eff. April 9, 2011 to Dec. 28, 2014); see, e.g., Salinas v. Starjem Rest. Corp., 13 Civ. 2992, --- F. Supp. 3d ----, 2015 WL 4757618 at *25 n.34 (S.D.N.Y. Aug. 12, 2015).  Prior to February 27, 2015, the WTPA entitled employees to recover statutory damages for wage notice violations of $50 per work week, not to exceed $2,500.  See 2010 N.Y. Laws ch. 564 § 7, amending N.Y. Labor Law § 198(1–b).

Jaquez was hired after the effective date of the WTPA (see page 4 above), and thus is entitled to statutory damages of $50 per week throughout his employment.  Baltierra and Jaquez were hired on June 1, 2004 and November 1, 2008, respectively, before the WTPA's effective date. (See pages 3, 5 above.)  Accordingly, Baltierra and Jaquez are not entitled to wage notice damages from the date they were hired.  On or before February 1, 2012, however, and on or before that date annually thereafter, defendants were required to provide Baltierra and Jaquez with wage notices. As Jaquez was no longer employed by defendants on February 1, 2012, he is not entitled to recover damages for the wage notice violation.  As Baltierra was employed by defendants after February 1, 2012, he is entitled to recover statutory damages of $50 per work week from that date for the duration of his employment.  Accordingly, plaintiffs' statutory damages for wage notice violations are as follows:

| | Period Start | Period End | Weeks in Period | Statutory Damages [weeks in period x $50, not to exceed $2,500] |
|---|---|---|---|---|
| Guzmaro Baltierra | 2/1/2012 | 7/30/2014 | 130 | $2,500 |
| David Perez | 8/15/2013 | 9/15/2013 | 4.5 | $225 |

In total, for wage statement and notice violations, plaintiffs' damages are as follows: Baltierra $5,000; Perez $675; and Jaquez, $1,800.

### F. Prejudgment Interest

Plaintiffs seek "[i]nterest as provided by law" on their claims. (Dkt. No. 21: Am. Compl. Wherefore ¶ K.) The Second Circuit has held that even where a plaintiff is awarded liquidated damages under the NYLL, prejudgment interest still is appropriate. See, e.g., Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999); Begum v. Ariba Disc., Inc., 12 Civ. 6620, 2015 WL 223780 at *3 (S.D.N.Y. Jan. 16, 2015); McClean v. Garage Mgmt. Corp., 09 Civ. 9325, 10 Civ. 3950, 2012 WL 1358739 at *10 (S.D.N.Y. Apr. 12, 2012) ("Because NYLL liquidated damages and prejudgment interest 'serve fundamentally different purposes', the Court of Appeals has observed that plaintiffs may recover both for the same unpaid wages."); Olvera v. New Ko-Sushi, 10 Civ. 4643, 2011 WL 724699 at *5 (S.D.N.Y. Feb. 16, 2011). This is because "'[p]re-judgment interest and liquidated damages under the [New York] Labor Law are not functional equivalents.'" Fu v. Pop Art Int'l, Inc., 10 Civ. 8562, 2011 WL 6092309 at *2 (S.D.N.Y. Dec. 7, 2011) (quoting Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d at 265), report & rec. adopted as modified on other grounds, 2011 WL 6092309 (S.D.N.Y. Sept. 19, 2011).[8/]

---

[8/] Interest is not awarded under the FLSA, as interest is assumed to be included under liquidated compensatory damages. See, e.g., Brock v. Superior Care, Inc., 840 F.2d 1054, 1065 (2d Cir. 1988) ("It is well settled that in an action for violations of the Fair Labor Standards Act prejudgment interest may not be awarded in addition to liquidated damages."); Paz v. Piedra, 09 Civ. 3977, 2011 WL 121103 at *13 (S.D.N.Y. Jan. 12, 2012); Fu v. Pop Art Int'l Inc., 2011 WL 6092309 at *2. For that reason, courts do not award statutory prejudgment interest on any portion of the recovery for which liquidated damages were awarded under the FLSA. See, e.g., Tackie v. Keff Enters. LLC, 14 Civ. 2074, 2014 WL 4626229 at *5 & n.5 (S.D.N.Y. Sept. 16, 2014) ("[P]laintiffs are entitled to prejudgment interest on any compensatory damages awarded under the NYLL for which there is no corresponding award of liquidated damages under FLSA."); Galeana v. Lemongrass on (continued...)

The statutory interest rate in New York of nine percent, C.P.L.R. § 5004, is applied to plaintiffs' NYLL unpaid minimum, overtime and spread of hours wage claims (that do not overlap with FLSA recovery). Because the unpaid minimum, overtime and spread of hours wages occurred at different times, interest is calculated pursuant to C.P.L.R. § 5001(b) ("Where . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."). Prejudgment interest is calculated from the midpoint of plaintiffs' employment at Advantage Pest Control up to and including the date of this Opinion.[9/]

---

[8/]    (...continued)
Broadway Corp., 10 Civ. 7270, --- F. Supp. 3d ----, 2014 WL 1364493 at *11 (S.D.N.Y. Apr. 4, 2014).

    There is a split in this Circuit as to whether prejudgment interest should be allowed on unpaid wages which are owed under both the FLSA and NYLL. Compare, e.g., Galeana v. Lemongrass on Broadway Corp., 2014 WL 1364493 at *11, and Janus v. Regalis Constr., Inc., No. 11-CV-5788, 2012 WL 3878113 at *9 (E.D.N.Y. July 23, 2012) (declining to award prejudgment interest on overlapping claims), report & rec. adopted, 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012), with Peralta v. M & O Iron Works, Inc., No. 12-CV-3179, 2014 WL 988835 at *12 (E.D.N.Y. Mar. 12, 2014), and Cesario v. BNI Constr. Inc., 07 Civ. 8545, 2008 WL 5210209 (S.D.N.Y. Dec. 15, 2008) (awarding prejudgment interest on overlapping claims), report & rec. adopted, 2009 WL 424136 (S.D.N.Y. Feb. 19, 2009). The same logic which prevents this Court from allowing cumulative liquidated damages under both the NYLL and FLSA, see, e.g., Fu v. Pop Art Int'l Inc., 2011 WL 4552436 at *3-5, likewise prevents prejudgment interest on overlapping claims for which FLSA liquidated damages have been awarded. As Perez's damages are awarded in their entirety pursuant to the FLSA (see page 19 above), and he is receiving liquidated damages under the FLSA, he is not owed prejudgement interest.

[9/]    Prejudgment interest applies only to the minimum, overtime and spread of hours compensatory damages and not also to the New York Labor Law liquidated damages on those wages. See, e.g., Janus v. Regalis Constr., Inc., 2012 WL 3878113 at *8; Chan v. Sung Yue Tung Corp., 03 Civ. 6048, 2007 WL 1373118 at *10 (S.D.N.Y. May 8, 2007) (Lynch, D.J.).

Baltierra began working for defendants on June 1, 2004 (see page 3 above), and while not entirely clear, it seems from his affidavit that he still is employed by defendants (see generally Dkt. No 46: Baltierra Aff.). The midpoint date of his employment thus is January 20, 2010. The period from January 20, 2010 to September 18, 2015, the date of this Opinion, is 2,067 days. At a rate of nine percent simple interest per year, defendants owe Baltierra interest of $57,949.34.[10] Jaquez began working for defendants on November 1, 2008 and ceased on August 15, 2011. The midpoint date of his employment is March 26, 2010, and the period from then to this Opinion's date is 2,002 days. Accordingly, defendants owe Jaquez interest of $8,692.30.[11]

### G. Attorneys' Fees and Costs

Under the FLSA and NYLL, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs. 29 U.S.C. § 216(b); N.Y. Labor Law § 663(1); accord, e.g., Young v. Cooper Cameron Corp., 586 F.3d 201, 208 (2d Cir. 2009) ("The FLSA provides that a court 'shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.'"); Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 151 (2d Cir. 2008) ("In addition to providing for liquidated damages, the FLSA directs courts to award prevailing plaintiffs reasonable attorney's fees and costs."); Imbeault v. Rick's Cabaret Int'l Inc., 08 Civ. 5458, 2009 WL 2482134 at *1 (S.D.N.Y. Aug. 13, 2009) (Lynch, D.J.)

---

[10] Baltierra's non-FLSA-overlapping damages under the NYLL for unpaid overtime, minimum and spread of hours wages are $113,760. (See chart on page 19 above.) Interest will continue to accrue at the rate of $28.05 per day until judgment is entered.

[11] Jaquez's non-FLSA-overlapping damages under the NYLL for unpaid overtime and minimum wages are $17,624.30. (See chart on page 19 above.) Interest will continue to accrue at the rate of $4.35 per day until judgment is entered.

("Both the FLSA and the NYLL provide that a prevailing plaintiff may seek an award of reasonable attorneys' fees and costs, to be paid by the defendants.").[12]

Plaintiffs seek $1,063.38 in costs.  (Dkt. No. 42: Chickedantz Aff. ¶ 21 & Ex. G.) Counsel's requests for costs is not supported by any documentation aside from a list of expenditures. (See Dkt. No. 50: 9/4/15 Ltr. Ex. 3 at 3-4)  The Court takes judicial notice of the Court's own filing fee amount of $350; in the absence of supporting documentation as to any further costs, only $350 is recoverable.  E.g., Carrasco v. W. Village Ritz Corp., 11 Civ. 7943, 2012 WL 2814112 at *7 (S.D.N.Y. July 11, 2012) (Peck, M.J.), report & rec. adopted, 2012 WL 3822238 (S.D.N.Y. Sept. 4, 2012); Fu v. Pop Art Int'l Inc., 10 Civ. 8562, 2011 WL 4552436 at *5 (S.D.N.Y. Sept. 19, 2011 ) (Peck, M.J.), report & rec. adopted as modified on other grounds, 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011).  Accordingly, the Court awards plaintiffs $350 for costs.

Plaintiffs request $33,409.00 in attorneys' fees.  (Dkt. No. 42: Chickedantz Aff. ¶ 21 & Ex. G.)  Plaintiffs seek hourly rates of $350 per hour for attorney Dictor, a third year associate, $300 per hour for attorney Chickedantz, a second year associate, and $250 per hour for attorney Lamadrid, a first year associate.  (Chickedantz Aff. Ex. G; Dkt. No. 50: 9/4/15 Ltr.)  "Generally rates in excess of $225.00 per hour are reserved for FLSA litigators with more than three years'

---

[12]    See also, e.g., Garcia v. Jambox, Inc., 14 Civ. 3504, 2015 WL 2359502 at *2 (S.D.N.Y. Apr. 27, 2015) ("The FLSA and the NYLL grant prevailing plaintiffs their attorney's fees 'to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" (quoting Aguilera v. Cookie Panache, 13 Civ. 6071, 2014 WL 2115143 at *2 (S.D.N.Y. May 20, 2014)); Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 511 (S.D.N.Y. 2011) (Peck, M.J.) ("Under the FLSA and N.Y. Labor Law, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs."); Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 473 (S.D.N.Y. 2009) ("In an action pursuant to the FLSA, a 'prevailing party' must be awarded reasonable attorneys' fees and costs . . . .  Likewise, the NYLL requires that '[i]n any action . . . in which the employee prevails, the court shall allow such employee reasonable attorney's fees . . . .'"(citations omitted)).

experience." Gonzalez v. Scalinatella, Inc.,13 Civ. 3629, --- F. Supp. 3d ----, 2015 WL 3757069 at

*21 (S.D.N.Y. June 12, 2015) (collecting cases).  Reasonable hourly rates for junior associates in

this district vary, but typically are between $150 and $200 per hour.  See, e.g., Andrews v. City of

N.Y., 10 Civ. 2426, --- F. Supp. 3d ----, 2015 WL 4622489 at *8 (S.D.N.Y. Aug. 3, 2015) (finding

$200 per hour reasonable for a second year associate); Alvarez v. 215 N. Ave. Corp., 13 Civ. 7049,

2015 WL 3855285 at *8 (S.D.N.Y. June 19, 2015) (approving junior associate rates of $150 per

hour); Gonzalez v. Scalinatella, Inc., 13 Civ. 3629, 2015 WL 3757069 at *22 (S.D.N.Y. June 12,

2015) (reducing rates to $200 per hour for a third year associate, $175 per hour for a second year

associate and $150 per hour for a first year associate); Rosendo v. Everbrighten Inc., 13 Civ. 7256,

2015 WL 1600057 at *8-9 (S.D.N.Y. Apr. 7, 2015) (reducing third year associate rate to $225 per

hour), report & rec. adopted, 2015 WL 4557147 (S.D.N.Y. July 28, 2015).  Accordingly, the Court

utilizes the following rates: $225 per hour for Dictor, $200 per hour for Chickedantz and $175 per

hour for Lamadrid.

Plaintiffs' counsel provided contemporaneous billing records and seeks compensation

for  21.1 hours of work by Dictor, 83 hours by Chickedantz and 4.1 hours by Lamadrid.  (9/4/15

Ltr.)  The Court has reviewed the information provided by counsel and finds the time expended to

be reasonable (although the billing entries could have provided more information). Accordingly,

plaintiffs are entitled to attorneys fees of $4,747.50 for Dictor, $16,600 for Chickedantz and $717.50

for Lamadrid, plus costs of $350, for a total of $22,415 in costs and attorneys' fees.

### H.    Joint and Several Liability

Under both the FLSA and NYLL, individual defendant Ortiz is considered an

employer and thus individually liable along with Advantage Pest Control.  29 U.S.C. § 203(d); N.Y.

Labor Law §§ 2(5)-(6); see, e.g., Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139-40 (2d Cir.

1999); Guaman v. Krill Contracting, Inc., No. 14-CV-4242, 2015 WL 3620364 at *3 (E.D.N.Y. June

9, 2015); Liu v. Jen Chu Fashion Corp., 00 Civ. 4221, 2004 WL 33412 at *6 (S.D.N.Y. Jan. 7, 2004)

(Peck, M.J.); Chang v. New Silver Palace Rest., Inc., 272 F. Supp. 2d 314, 318 & n.6 (S.D.N.Y.

2003) (test for employer under N.Y. Labor Law is same as Herman test under FLSA).   Because

defendants defaulted, defendants cannot now challenge liability, and thus all defaulting defendants

are held jointly and severally liable.   See, e.g., Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty

Corp., 973 F.2d 155, 158, 161 (2d Cir. 1992) ("[A] party's default is deemed to constitute a

concession of all well pleaded allegations of liability. . . ."), cert. denied, 506 U.S. 1080, 113 S. Ct.

1049 (1993); Mestousis Enters. Inc., v. Concord Blue Inc., 11 Civ. 3384, 2012 WL 254987 at *5

n.13 (S.D.N.Y. Jan. 27, 2012) (Peck, M.J.), report & rec. adopted, 2012 WL 1193752 (S.D.N.Y.

Apr. 10, 2012); Felix Produce Corp., v. New Lots Food Corp., No. 08-CV-5161, 2009 WL 2985444

at *2 (E.D.N.Y. Sept. 14, 2009) ("By virtue of the well-pleaded factual allegations in the complaint

which are deemed true by virtue of [defendants'] default, the undersigned finds that [plaintiff] has

established joint and several liability . . . ."); Ting Yao Lin v. Hayashi, 08 Civ. 6071, 2009 WL

289653 at *8 (S.D.N.Y. Jan. 30, 2009) (Peck, M.J.); La Barbera v. Les Sub-Surface Plumbing, Inc.,

No. 06 CV 3343, 2008 WL 906695 at *4 (E.D.N.Y. Apr. 3, 2008) ("[P]laintiffs have adequately

pled, and by virtue of defendants' default, have established the joint and several liability of"

defendants.); Chaman LAL Setia Exports Ltd. v. Sawhney, 00 Civ. 2838, 2003 WL 21649652 at *4

(S.D.N.Y. May 28, 2003) ("[D]efendants' joint and several liability is established by the allegations

made in the complaint and [the District Judge's] granting of a default judgment.").

## CONCLUSION

Accordingly, judgment is entered against the defendants, Advantage Pest Control and

Oritz, jointly and severally, for the plaintiffs, as follows: Baltierra $379,532.24; Perez $5,234.40;

28

and Jaquez $34,322.68 (plus continuing prejudgment interest until judgment is entered), as well as

costs and attorneys' fees of $22,415.

| | Unpaid Overtime, Minimum and Spread of Hours Wages | Liquidated Damages | Wage Statement and Notice Violations | Prejudgment Interest | Total |
|---|---|---|---|---|---|
| Guzmaro Baltierra | $196,091.25 | $120,491.65 | $5,000.00 | $57,949.34 | **$379,532.24** |
| David Perez | $2,284.20 | $2,284.20 | $675.00 | $0 | **$5,243.40** |
| Kelvin Jaquez | $17,849.30 | $5,981.08 | $1,800.00 | $8,692.30 | **$34,322.68** |

SO ORDERED.

Dated:        New York, New York
             September 18, 2015

_____
**Andrew J. Peck**
United States Magistrate Judge

Copies ECF to:        All Counsel
                      Tony Ortiz (mail)